UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LAN THI HO,

Petitioner,

v.

TODD BLANCHE, ET AL,

Respondent.

Case No. 2:26-cv-03590-TLF

ORDER GRANTING HABEAS CORPUS PETITION IN PART

Petitioner Lan Thi Ho, a 58-year-old citizen and native of Vietnam, is currently detained by U.S. Immigration and Customs Enforcement (ICE) at Northwest ICE Processing Center (NWIPC) in Tacoma, Washington. Dkt. 12, Declaration of Deportation Officer Nhat Truong (Truong Decl.) at 6. She was re-detained on July 21, 2026 at an ICE check-in. *Id*. at 12.

The parties consent to the jurisdiction of a Magistrate Judge. Dkt. 5.

For the reasons below, the Court GRANTS IN PART the habeas petition (Dkt. 8), and ORDERS respondents to release petitioner within 24 hours of the filing of this Order, subject to her prior OSUP conditions of supervision.

**A. Background**

Petitioner entered the United States as a 13-year-old refugee in 1980 or 1981. Dkt. 12, Declaration of Deportation Officer Nhat Truong (Truong Decl.) at 1-2; Dkt. 8, habeas corpus petition at 4. She obtained a green card as a lawful permanent resident

in 1990. *Id.* Petitioner's (now deceased) husband was a United States citizen and her five children are all U.S. citizens. *Id*. at 4.[1]

In 2000 and 2001, petitioner was convicted in Pierce County, Washington, of attempted unlawful possession of a controlled substance and unlawful possession of a controlled substance under RCW 69.50.403. *See* Dkt. 8, Exs. 1–2. Based on those convictions, an immigration judge ordered petitioner removed to Vietnam on September 21, 2001. Dkt. 8 at 4. Petitioner was released from immigration custody under an Order of Supervision (OSUP) on January 8, 2002. Dkt. 13-1, OSUP.

Petitioner argues that her underlying convictions have since been vacated under *State v. Blake*, 197 Wash. 2d 170, 481 P.3d 521 (2021), in which the Washington Supreme Court held Washington's simple drug possession statute unconstitutional. Dkt. 8 at 5. She contends that, if she were placed in removal proceedings today, the government could not rely on those convictions as the basis for her removal. *Id.* Through counsel, petitioner intends to seek reopening of her removal proceedings and a stay of removal. *Id.* at 11.

On July 21, 2026, ICE re-detained petitioner during a regularly scheduled check-in. Dkt. 13-2 at 3. The Form I-213 does not state the reason she was arrested, and only identifies her criminal history, including two misdemeanor cocaine-possession convictions dated December 25, 2000, and March 8, 2001, and a pending misdemeanor drug-possession charge dated December 4, 2018. *Id.* The form also notes that an immigration judge ordered petitioner removed to Vietnam on September 21, 2001. *Id.*

[1] The government's I-213 form states, "subject does not have children or dependents." Dkt. 13-2, I-213.

The Form 1-213 cites additional criminal history, the latest incident in December 4, 2018, and alleged late or missed check-ins. *Id.*

On the day of her arrest, ICE issued petitioner a Notice of Revocation of Release. Dkt. 13-4. The notice stated that petitioner would receive an informal interview to respond to the reasons for revocation. *Id*. The stated reason was that "ICE is seeking a travel document to affect your expeditious removal to Vietnam." *Id.* at 2. The certificate of service for the Warrant for Arrest of Alien is not signed or dated, although the warrant itself is signed and dated. Dkt. 13-3.

Respondents also submitted an Alien Informal Interview Upon Revocation of Order of Supervision form. Dkt*.* 13-4 at 4. The form identifies an officer named Castro as the interviewer but does not document what occurred in the interview. *Id.* The section asking for petitioner's oral response to the reasons for revocation is blank. *Id*. The form also indicates that petitioner did not provide a written statement or supporting documents. *Id.*

Petitioner alleges "ICE has yet to show her a copy of a travel document to Vietnam." Dkt. 8 at 7. Respondents attached a letter to the consulate dated August 21, 2026, that states, "a prompt response would be appreciated." Dkt. 13-5. There is no other evidence of ICE effectuating removal to Vietnam since August 21, 2026, one month after she was detained.

**B. Discussion**

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is in "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3).

The authority of ICE to detain noncitizens under federal law, 8 U.S.C. § 1231, directs the Attorney General of the United States to effectuate the removal of any noncitizen from this country within 90 days of any order of removal. 8 U.S.C. § 1231(a)(1). The removal period begins to run, as relevant here, on "[t]he date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i).

Section 1231(a)(6) authorizes ICE to continue detention of noncitizens after the expiration of the removal period. In *Zadvydas*, the Supreme Court considered the provisions of 8 U.S.C. § 1231(a)(6) and imposed constitutional limits on the indefinite detention of noncitizens. The Supreme Court held that the Due Process Clause prohibits detention beyond the period reasonably necessary to effectuate removal because "freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty [the] Clause protects." *Id.* at 690.

The Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id*. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

If the government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief. *Id.*; *see Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018). Once "removal is no longer reasonably foreseeable, continued detention is no longer

authorized by statute," the noncitizen must be released. *Zadvydas*, 533 U.S. at 699. The noncitizen may be released on an Order of Supervision (OSUP). 8 C.F.R. § 241.13(h).

The regulation governing revocation of petitioner's release is § 241.13(i), which specifically applies to noncitizens whom the government has determined "there is no significant likelihood . . . [that they] can be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(b)(1).

Here, the parties do not dispute that petitioner's removal order became final more than 25 years ago. Respondents expressly acknowledge that the July 21, 2026, encounter did not restart the six-month period under *Zadvydas*. Dkt. 11 at 10.

Petitioner argues "…removal to Vietnam is not reasonably foreseeable and Ms. Ho's continued detention is in violation of *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001)." Dkt. 8 at 4. She also argues that, since the Washington Supreme Court ruled that Washington's simple drug possession statute was unconstitutional, and the convictions have been vacated by King Cnty. under *State v. Blake*, 197 Wash.2d 170, 481 P.3d 521 (2021), if petitioner, were placed in removal proceedings today, the government could not rely on the same offenses that formed the sole basis for her removal order. *Id*. at 5.

In response, respondents state that, state that, on August 21, 2026, Enforcement and Removal Operations (ERO) prepared and submitted a travel-document request for review and subsequent submission to Vietnamese officials. Dkt. 12, Truong Decl. at 6. They also assert that "Petitioner's case is pending the issuance of a travel document that ERO intends to use to effectuate her final order of removal to Vietnam" and that "Vietnam has issued travel documents for similarly situated aliens like Petitioner and ERO expects Vietnam to issue a travel document for Petitioner. Once a travel document

is acquired, ERO intends to remove Petitioner to Vietnam in the normal course. Based on ERO's experience in removal of aliens subject to a final order to Vietnam, there is a significant likelihood of removal in the reasonably foreseeable future." *Id*. at 6-7.

The record shows that ICE sent a travel document request on August 21, 2026. But it does not establish that Vietnamese authorities acknowledged the request, responded to it, or explained when a travel document might issue.

The request document states only that a prompt response would be appreciated. Dkt. 13-5. The Court must make an individualized analysis for a detainee. *See Nguyen v. Scott*, 796 F. Supp. 3d 703, 726 (W.D. Wash. Aug. 21, 2025) (stating increase in total number of removals to Vietnam, including those who entered pre-1995, fails to rebut the evidence presented by Petitioner that "his individual circumstances make removal unlikely").

Respondents provide no evidence of subsequent communication with Vietnamese authorities or any estimated timeline for obtaining a travel document. *See*, *e.g.*, *Pham v. Scott*, No. 2:26-cv-00027-LK, 2026 WL 238994, at *5 (W.D. Wash. Jan. 29, 2026) ("an assertion of good-faith efforts to secure removal. . . does not make removal likely in the reasonably foreseeable future."); *Abubaka v. Bondi*, No. C25-1889RSL, 2025 WL 3204369, at *3–5 (W.D. Wash. Nov. 17, 2025) (government failed to meet its burden of showing that removal to Vietnam was likely "in the reasonably foreseeable future" where "the record before [the] Court only shows the Government making preparations to submit a travel document request to the Government of Vietnam" but had not yet submitted a request for travel documents); *Tran v. Bondi*, No .C25-01897-JLR, 2025 WL 3140462, at *3 (W.D. Wash. Nov. 10, 2025) ("ICE is not permitted to hold [petitioner]

indefinitely while it waits for travel documents from Vietnam.”). The government has “provided no timeline . . . nor any information about the likelihood that the government of Vietnam will ultimately approve the issuance of travel documents for Petitioner.” *Van Huynh v. Bondi*, No. C25-2093-KKE, 2025 WL 3534210, at *3 (W.D. Wash. Dec. 10, 2025). Accordingly, the government has not met its burden since the record leaves the timing and likelihood of removal uncertain.

Petitioner’s criminal history does not alter the analysis. If *Zadvydas* is satisfied, release is warranted even if the petitioner has a criminal record. *Baltodano v. Bondi*, 815 F. Supp. 3d 1191, 1199 (W.D. Wash. 2025) (quoting *Zadvydas*, 533 U.S. at 684) (“…the Court is bound by the holding in *Zadvydas*, a case that notably involved [an] individual with ‘a long criminal record’ and ‘a history of flight.’”); *see also Hagos v. Blanche*, No. 2:26-cv-01513-TLF, 2026 WL 1905861, at *3 (W.D. Wash. July 2, 2026).

The Court finds that petitioner has met her burden under *Zadvydas*, and the government has failed to rebut her showing. Accordingly, petitioners’ continued detention violates the Due Process Clause. [2]

Petitioner asks the court to grant immediate release, and order that respondents: (1) may not re-detain petitioner without notice and a hearing before a neutral decisionmaker at which respondents bear the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances since petitioner was previously released; (2) may not enforce petitioner’s removal order; (3) alternatively, temporarily enjoin respondents from enforcing petitioner’s removal order

[2] The Court does not decide whether petitioner’s underlying convictions have been vacated or whether she would be subject to removal if placed in new removal proceedings. The Court does not address the other due process arguments, because release is granted under *Zadvydas.*

until the BIA had ruled on petitioner's motion to reopen or petitioner files an appeal of a denial of the motion to reopen with the Ninth Circuit; (4) declare that the enforcement of petitioner's removal order would be unlawful because it is based on two criminal convictions that have been vacated as unconstitutional and no longer carries immigration consequences; (5) may not remove petitioner until at least seven days after service of any Board decision denying reopening so Petitioner may seek review and a judicial stay in the Ninth Circuit; (6) may not otherwise re-detain petitioner unless they: (a) obtain a valid travel document to Vietnam for her, (b) provide the valid travel document to petitioner and her counsel, (c) offer petitioner the opportunity to leave on her own within two months, and (d) petitioner does not leave. Only under such circumstances, respondents may be permitted to re-detain Petitioner provided they have made concrete arrangements for her to be put on a flight to Vietnam in the reasonably foreseeable future; (7) may not remove or seek to remove petitioner to  third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings; (8) may not remove petitioner to any third country where she is likely to face imprisonment or other punishment upon arrival; and (9) release petitioner on the same conditions as on her most recent release.

Federal courts have "a fair amount of flexibility" in fashioning specific habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). Petitioner has been subject to detention that has exceeded the Due Process limits determined under *Zadvydas*, which is a significant injury. The Court has addressed this by granting habeas corpus relief and releasing her.

A plaintiff must meet four elements to justify an order granting a permanent injunction: first, they have suffered an irreparable injury; second, remedies at law would be inadequate to compensate plaintiff for the injury; third, considering the balance of hardships between plaintiff and defendant, an equitable remedy is warranted; and fourth, the "public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006). On this record, petitioner has not met the first element, that she would suffer irreparable injury without a permanent injunction. *See Le v. Bondi,* 824 F. Supp. 3d 1112, 1121-22 (W.D. Wash. 2026) (whether the Government complied with petitioner's right to due process as applied must be reviewed based on specific circumstances at the time); *Rahim v. Hernandez,* No. 2-26-cv-03476-LK, 2026 WL 3059247 (W.D. Wash. Oct. 13, 2026) (citing *Roman v. Wolf,* 977 F.3d 935, 942 (9th Cir. 2020) and finding that criteria for permanent injunctive relief were not met). Nothing in this order prevents petitioner from pursuing additional relief if warranted by future events. *See Coke v. Bondi,* No. C26-71-MLP, 2026 WL 221514, at *4 (W.D. Wash. Jan. 28, 2026)

**C. CONCLUSION**

For all these reasons, the Court GRANTS IN PART and DENIES IN PART petitioner's habeas petition:

1) Respondents **ARE ORDERED TO** release petitioner **within 24 hours** of this Order under her prior conditions of supervision for the OSUP.
2) Within two business days of petitioner's release, respondents must file a certification with this Court confirming the date and time petitioner was released from custody.

…

Dated this 23rd day of October, 2026.

Theresa L. Fricke
United States Magistrate Judge